1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

THOMAS DAVIS III, et al.,                                  )
                                                          )
                               Plaintiffs,                )       Case No. 2:08-cv-00722-RCJ-PAL
                                                          )
vs.                                                       )       **<u>ORDER</u>**
                                                          )
WESTGATE PLANET HOLLYWOOD LAS            )       (M/ Circulate Notice - Dkt. # 10)
VEGAS, LLC., et al.,                                      )       (M/ Supplement - Dkt. #16)
                                                          )       (M/ Strike - Dkt. # 37)
                                                          )       (M/Leave Supplement - Dkt. #49)
                               Defendants.                )       (M/Leave 2nd Supplement - Dkt. #57)
_____)

        The court conducted a hearing on September 9, 2008 on Plaintiffs' Motion for Circulation of

Notice of the Pendency of this Action Pursuant to 29 U.S.C. § 216(B) (*sic*) and For Other Relief

(Dkt. #10) filed on July 7, 2008.  On August 25, 2008, Defendants filed a Memorandum in Opposition

to the Motion to Circulate (Dkt. #35), to which the Plaintiffs replied (Dkt. #38) on September 5, 2008.

The court has considered the motion to circulate, the opposition, the reply, and the arguments of

counsel made upon the record.  Also before the court is Plaintiffs' Motion to File the Declaration of

Rick Brunton as a Supplement in Support of Plaintiffs' Motion to Circulate Notice of Pendency

(Dkt. # 16), filed on July 18, 2008; Defendants' Response to the Motion to Supplement (Dkt. #27), filed

on July 25, 2008; and Plaintiffs' Motion to Strike Declaration of Barry Seigel (Dkt. #37), filed on

September 4, 2008.

        After the hearing, the plaintiffs filed a Motion to File Supplement in Support of Plaintiffs'

Motion to Circulate a Notice of Pendency Under the Fair Labor Standards Act and to Expand the Scope

of the Notice Proposed by the Plaintiffs (Dkt. #49) on October 27, 2008.  Defendants filed a

Memorandum in Opposition (Dkt. #56) November 24, 2008, and on the same day, plaintiffs filed a

Motion to File a Second Supplement in Support of Plaintiffs' Motion to Circulate a Notice of Pendency

under the Fair Labor Standards Act (Dkt. #57).  Plaintiffs filed a Reply to Defendants' Response to Plaintiffs' Motion to File Supplement (Dkt. #63) December 9, 2008.  Defendants filed a Memorandum in Opposition to Plaintiffs' Second Motion to File Supplement in Support of Plaintiffs' Motion to Circulate a Notice of Pendency Under the Fair Labor Standards Act (Dkt. #66) December 12, 2008, and plaintiffs filed a Reply to Defendants' Response to Plaintiffs' Second Motion to File a Supplement in Support of Plaintiffs' Motion to Circulate a Notice of Pendency under the Fair Labor Standards Act (Dkt. #69) on December 25, 2008.

As an initial matter, the court notes that the plethora of papers filed after the hearing on the motion for circulation of notice of the pendency of this action has multiplied these proceedings and delayed consideration of the initial motion on the merits.  The Federal Rules of Civil Procedure and the Local Rules of Practice permit parties to file a motion, a response to a motion, and a reply.  Filing supplemental papers which advance additional arguments or cite authority that could have been cited in the original moving and responsive papers is not appropriate.  However, because plaintiffs have twice amended the complaint since the original motion was filed, adding additional plaintiffs and claims, the court will address these matters on the merits.

## **BACKGROUND**

### **The Original Complaint**

The Complaint in this case was filed in state court and removed (Dkt. #1) June 4, 2008.  The plaintiff, Thomas Davis III, asserted a class action complaint for violation of state and federal labor laws, individually and on behalf of all other similarly situated against the named defendants who are alleged to be legal entities that are part of the Westgate Timeshare Business Enterprise ("Westgate") and liable to the plaintiff.  The initial complaint asserted that the Westgate defendants were engaged in the sale, development, and management of timeshare properties throughout the United States, including in Nevada, Arizona, Florida, Missouri, Mississippi, South Carolina, Tennessee, Utah, and Virginia.  Plaintiff alleged he was employed as a sales person in Westgate's Las Vegas timeshare sales business for three years preceding the filing of this lawsuit and, like all other sales persons, was paid by the defendants on a commission-only basis.  Plaintiff alleged that the defendants violated the Fair Labor Standards Act by paying the plaintiff and all of its timeshare sales persons on a commission-only basis.

Defendants' compensation is alleged to violate the FLSA by not paying a minimum hourly wage and/or not paying overtime for employees who work in excess of forty hours per week.

The original complaint also stated claims for breach of contract and conversion under Nevada law and sought to bring this action as a class action under Nevada Rules of Civil Procedure 23 on behalf of the named plaintiff and a Nevada subclass of similarly situated sales persons employed by the defendants in the state of Nevada "and/or a class of all similarly situated sales persons employed" by the defendants in the United States who were damaged by the defendants' breach of its contract and acts of conversion within two, three, or six years "or such other applicable statute of limitations" from the filing of the complaint.

**Plaintiffs' First Amended Complaint**

On July 11, 2008, after the motion for circulation of notice was filed, the plaintiff filed a Motion to Amend his complaint (Dkt. #15).  After filing a Motion to Strike the Declaration of Rick Brunton (Dkt. #17), the parties stipulated that defendants would withdraw their motion to strike and that plaintiff be permitted to file an amended complaint.  See Stipulation (Dkt. #41) and Order granting stipulation (Dkt. #44).  Plaintiff's First Amended Complaint (Dkt. #45) added Rick Brunton as an individual plaintiff.  It also sought to bring suit on behalf of the named plaintiffs and others similarly situated sales personnel of the defendants on a nationwide basis.  The first amended complaint alleged claims for violation of the FLSA for failure to pay minimum wage during certain weeks and failure to pay overtime for sales personnel who worked in excess of forty hours per week.  It also sought to certify a collective action pursuant to § 16(b) of the FLSA, and alleged a second claim for relief under Nevada Labor Laws citing specific provisions of Nevada Revised Chapter 608; a third claim for relief under N.R.S. 608.040 for unpaid wages; a fourth claim for relief for breach of contract for defendants' failure to pay individual plaintiffs and members of the putative plaintiff class commissions; and a fifth claim for conversion based on defendants' alleged failure to deliver funds held in a reserve account to cover "charge backs" for commissions paid which defendants later reclaimed.

**Plaintiffs' Second Amended Complaint**

On October 31, 2008, plaintiffs filed a Second Motion to Amend the Complaint (Dkt. #50).  The defendants opposed the motion, and the District Judge held a hearing January 5, 2009 at 9:00 a.m.

1   Counsel for the parties appeared before the undersigned on plaintiffs' motion to compel at 10:30 a.m.

2   the same morning and orally reported that the District Judge granted in part and denied in part the

3   plaintiffs' motion to file a second amended complaint[1].  Judge Jones granted the plaintiffs leave to file a

4   second amended complaint to add two additional named plaintiffs and to assert an additional claim for

5   relief based on nonpayment of minimum wages under Florida law.  He denied, however, plaintiffs leave

6   to file a claim for violation of Florida's Deceptive and Unfair Trade Practices Act.  The second

7   amended complaint also removed references to N.R.S. § 608.100 from the complaint and made other

8   changes to the language consistent with the proposed amendments.  The second amended complaint

9   seeks to certify a collective action on behalf of all sales persons and closing officers who worked for the

10  defendants nationwide within the three years immediately preceding the filing of his complaint pursuant

11  to 29 U.S.C. § 216(b).  It also seeks to certify a class action of a Nevada subclass of plaintiffs for

12  defendants' violation of Nevada Labor Laws, citing the same provisions of Chapter 608 of the Nevada

13  Revised Statutes but deleting N.R.S. 608.100, and violation of N.R.S. 608.040.  The fourth claim seeks

14  class certification of all of defendants' commissioned timeshare sales persons and closing officers

15  nationwide for breach of contract and conversion.  Plaintiffs' sixth claim for relief under Florida's

16  Minimum Wage Act seeks to certify a Florida subclass of sales persons who were not paid minimum

17  wages and seeks liquidated damages and other relief.

18  **DISCUSSION**

19  **I.    Motion to Circulate Notice of Pendency (Dkt. #10) and Motion to Supplement and Expand**

20  **(Dkt. #49)**

21      **A.    The Parties' Positions**

22      The motion to circulate asserts that there are other sales personnel who work for the defendants

23  who are similarly situated to the plaintiffs and seeks an order, pursuant to 29 U.S.C. § 216(b),  directing

24  that nationwide notice be issued to the defendants' sales personnel so that they can decide whether to

25  "opt in" to this case for claims made under the FLSA.  Specifically, plaintiffs assert there are potential

26

27  _____

28      [1]  As of the date of this order, counsel for plaintiffs had not yet filed the Second Amended
    Complaint to conform to Judge Jones' order granting in part and denying in part the motion to amend.

1   FLSA plaintiffs who are similarly situated to the named plaintiffs because they: (a) sold identical

2   products, a real estate interest in defendants' timeshare; (b) were compensated on a commission-only

3   basis; (c) did not receive overtime pay during weeks in which they worked in excess of forty hours per

4   week or minimum wages for each week that they worked; and (d) were not exempt from the FLSA's

5   minimum wage and overtime pay requirements.  Plaintiffs acknowledge that the defendants classify its

6   timeshare sales personnel as independent contractors but assert that the payroll status of the proposed

7   "opt in" plaintiffs is irrelevant at this stage of the litigation and that employment for purposes of the

8   FLSA is considered under a broader "economic realities test."  Although plaintiffs assert they are

9   employees for purposes of the FLSA, under the "economic realities" test, they argue their alleged status

10   as independent contractors rather than employees is an issue which should be addressed in a "second

11   tier" motion for decertification of the class rather than at the notice stage.

12        The motion to circulate also requests that the court toll the statute of limitations for the potential

13   plaintiffs to join this action while the motion to circulate is pending because the statute of limitations on

14   an FLSA claim continues to run until a potential plaintiff files a written consent with the court

15   indicating his or her desire to opt into the case.  The motion to circulate further requests that: (a) this

16   court grant at least a 120-day period for additional potential plaintiffs to join the suit; (b) defendants be

17   ordered to provide plaintiffs with the names, addresses, phone numbers, and email addresses of

18   defendants' timeshare personnel for a three-year period; (c) the notice of pendency be conspicuously

19   posted in defendants' places of business for ninety days; and (d) defendants be required to publish the

20   notice of pendency in employee newsletters for three issues and email the notice of pendency to its

21   timeshare sales personnel.  The motion was supported by the declaration of named plaintiff Thomas

22   Davis III.  Eleven days after the initial motion was filed, plaintiffs also filed a Motion for Leave to File

23   the Declaration of Rick Brunton as a Supplement (Dkt. #16).  Mr. Brunton filed a Consent to Join

24   (Dkt. #14) July 11, 2008 and became a plaintiff with respect to the FLSA claims.  He also joined in the

25   motion to amend the complaint to become a named putative class representative plaintiff for all

26   purposes.  Defendants filed a response to plaintiffs' motion to file the declaration of Rick Brunton

27   (Dkt. #27), indicating they did not oppose the motion.

28   / / /

The defendants requested and received leave to file a brief in excess of thirty pages and filed a memorandum in opposition to the motion for circulation which provided the court with a general overview of the defendants and their sales operations outside Las Vegas, Nevada.  Defendants oppose the motion to circulate notice of pendency, asserting the plaintiffs failed to produce sufficient evidence that they are similarly situated to other sales persons in Nevada and failed to offer any evidence that they are similarly situated to timeshare persons outside Las Vegas, Nevada.  Defendants characterize plaintiff Davis as a "serial plaintiff" who worked as a timeshare sales person at Westgate's Planet Hollywood resort in Las Vegas, Nevada, for seventeen weeks in 2007.  Contending that the plaintiffs have not established an evidentiary basis to allow conditional certification, the defendants ask that the court deny the motion for conditional certification under § 216(b) or, in the alternative, narrowly define the collective class to day-line sales representatives working at Westgate's Planet Hollywood location who received half-checks rather than draws.  Defendants acknowledge that plaintiffs' employment status as independent contractors or as employees is not dispositive of the motion to circulate notice of pendency at this stage of the litigation.

Most of the first half of the defendants' opposition consists of a description of Westgate and its sales operations inside and out of the state of Nevada.  The defendants state that Westgate is the largest privately held timeshare developer in the world and currently operates approximately twenty resorts in nine states – Arizona, Florida, Nevada, Missouri, Mississippi, South Carolina, Tennessee, Utah, and Virginia.  The opposition is supported by the declarations of Barry Siegel, the Executive Vice President of Sales for CFI Sales & Marketing, Ltd., and Bobby Fusik, the In-House Senior Vice President of Sales & Marketing for CFI Sales & Marketing, Ltd.  The opposition and supporting declarations state that Westgate's sales operations are divided into day-line or front-line sales operations and in-house sales operations which are distinct operations, target different customers, act independently from each other, and typically have different hours, practices, sales staff and decision makers.  Defendants claim that plaintiffs Davis and Brunton have only worked day-line sales and , therefore, have no factual basis to address defendants' in-house sales operations or relevant payroll or compensation practices.

Defendants provide a lengthy description of their operations in all twenty resorts in nine different states to support their position that the plaintiffs have not established that there are putative

class members who are similarly situated and similarly affected by a common unlawful policy needed before the court can certify a collective action beyond plaintiffs' own work location.  Defendants argue that plaintiffs have presented no evidence regarding defendants' sales operations in Utah, South Carolina, Texas, Tennessee, Arizona, Missouri, or Virginia.  Moreover, defendants assert that plaintiffs' reliance on unattributed hearsay regarding Westgate's pay policies and work hours in Florida does not demonstrate that the plaintiffs are similarly situated to timeshare personnel in Florida.

If the court is inclined to grant the motion and authorize circulation of notice of pendency of this action, defendants assert that the proposed notice of pendency submitted by plaintiffs is overly broad and should be (a) limited to day-line sales representatives[2] who received half-checks rather than draws;[3] (b) modified to reflect the statute of limitations imposed by the FLSA; (c) explain the costs potential plaintiffs may incur by opting in; and that (d) the notice period should be limited to a period of forty-five to sixty, rather than one hundred twenty days.  Defendants object to bearing any costs for circulating the notice and to being required to deliver the notice by the four different methods plaintiffs request.  Finally, defendants oppose tolling the statute of limitations while the motion for circulation is pending.

Plaintiffs filed a Motion to Strike the Declaration of Barry Siegel (Dkt. #37), asserting the statement in his declaration that he has personal knowledge of a number of things averred is "patently false" on its face and that the declaration consists of incompetent evidence pursuant to Federal Rule of Evidence 602.  Plaintiffs claim that Siegel does not explain the basis for his statements that he has

---

[2]  According to defendants' opposition, defendants' sales operation is divided into two areas–day-line or front-line and in-house.  Day-line sells interests in timeshare resorts to those persons who have never purchased a timeshare or those who own a timeshare with another company.  In-house sells to those customers who already own a defendant timeshare or other guests staying on the defendants' resort properties.

[3]  Defendants state that commissioned salespeople can choose to receive a portion of their commission immediately following a sale.  If a customer makes the entire down payment, the salesperson can elect to receive a portion of the commission (a "half-check").  If, however, a customer pays a lesser amount of the down payment, sales personnel are entitled to receive a lesser portion of the commission (a "quarter-check").  Defendants assert that plaintiffs were both compensated in this manner and did not receive draws.

7

1   personal knowledge of the hours front-line or day-line sales persons worked at the sales location he

2   discusses, that he does not state he actually observed persons working and the hours they worked, or the

3   basis of his personal knowledge.  As such, his declaration is inadmissible hearsay and should not be

4   considered.  The motion to strike is supported by the declaration of Rick Brunton which controverts Mr.

5   Siegel's statements about typical hours that day-line timeshare persons working at the Flamingo Bay,

6   Showcase, and Planet Hollywood locations in Las Vegas worked.  Mr. Brunton avers that Mr. Siegel

7   has no actual personal knowledge of the hours that timeshare sales persons at these locations worked

8   and had limited contact with sales personnel at these locations.

9       Plaintiffs reply that the defendants have provided the court with self-serving, incomplete,

10  inaccurate, and misleading information to prevent circulation of notice and evade their FLSA liabilities.

11  The plaintiffs argue that defendants' statements concerning their current compensation policies do not

12  address prior compensation policies or controvert plaintiffs' allegations of a common policy violating

13  the FLSA.  Plaintiffs assert that Mr. Siegel's statements regarding defendants' current compensation

14  policies provide no information about how defendants compensated their sales personnel, whether

15  classified as employees or independent contractors, during the three-year period preceding this lawsuit.

16      Plaintiffs accuse the defendants of implying something they do not actually state with respect to

17  paying overtime wages in compliance with the FLSA.  As such, defendants "implicitly confirm the

18  plaintiffs' claims of a common compensation policy violating the FLSA."  Reply (Dkt. #38), 5:3-6.

19  Plaintiffs suggest that the court should conclude, based on the defendants' failure to detail its

20  compensation policies prior to August 2008, that many of defendants' current compensation policies

21  were instituted in a response to this litigation as a corrective measure.  Id., 6-10.  Plaintiffs emphasize

22  that defendants have not denied that they have a commission-only compensation system in all twenty

23  sales locations.  Plaintiffs argue that the inevitable result of this compensation system is widespread

24  violations of the FLSA minimum wage requirements when sales persons work during certain weeks and

25  receive no commissions.  Plaintiffs read the defendants' opposition as an admission that the defendants'

26  commission-only compensation system failed to pay FLSA required overtime at fifteen of their twenty

27  sales locations.  Plaintiffs also point out that the defendants do not claim that they pay overtime in any

28  of their Florida sales locations.

Plaintiffs also contend that any distinction between day-line and front-line employees is meaningless, and notice should be sent to both groups because both front-line and in-house sales persons sell the same product – timeshare interests.  Plaintiffs also reiterate that, at this stage of the litigation, the court's role is to determine whether there is some factual basis to conclude that the named plaintiffs' alleged FLSA violations constitute a common unlawful policy or practice involving other similarly situated persons, not whether plaintiffs' can ultimately prove FLSA violations actually occurred.

At the September 9, 2008 hearing on the motion to circulate, counsel for plaintiffs asserted that nationwide notice to commission-only compensated employees and independent contractors of defendants is warranted because these individuals are similarly situated to the named plaintiffs. Plaintiffs assert that the potential plaintiffs are similarly situated because the potential plaintiffs were not paid minimum wage during weeks where they did not sell a sufficient number of timeshare interests and weeks in which they worked in excess of forty hours without receiving overtime pay.  Counsel for plaintiffs also argued that there is no functional difference between the potential plaintiffs employed in the day-line and in-house sales personnel positions, and notice should be given to both groups.  Further, counsel for plaintiffs asserted that the current policies described by defendants in their opposition regarding daily draws as a means of compensation did not exist prior to June 2008 and are, therefore, not relevant to deciding the motion to circulate.

Counsel for defendants asserted that plaintiffs have not made an adequate evidentiary showing that they are similarly situated to the potential plaintiffs.  Specifically, counsel for defendants asserted that plaintiffs failed to demonstrate knowledge of any compensation policy or practice which existed outside of Las Vegas, Nevada.  The "wild disparity" among defendants' various sales operations across the country outlined in the opposition precludes nationwide notice of pendency.  Defendants' counsel conceded that the commission-only compensation scheme did exist in Las Vegas, and that plaintiffs had made an adequate showing that potential plaintiffs located in Las Vegas, Nevada were similarly situated to the named plaintiffs.  Defendants argued that if the court grants circulation of notice, it should be limited to sales personnel working at the defendants' Las Vegas, Nevada locations, including the Flamingo Bay, Planet Hollywood, and Showcase Mall facilities.

**B.**    **Plaintiffs' Motion to File Supplement (Dkt. #49)**

On October 27, 2008, plaintiffs filed a Motion to File Supplement (Dkt. #49), to supplement the motion to circulate to request an expansion of the scope of the proposed notice to persons who worked as closing officers.  The declaration of Lois Tiger, who was employed by the defendants both as a sales person and as a closing officer in defendants' Las Vegas, Nevada and Florida locations is attached.  Ms. Tiger is now a named plaintiff and avers that defendants Florida timeshare sales personnel often received no compensation during certain weeks in which they worked but make no sales and earned no commission. Her declaration also states that although defendants have a weekly draw system in Florida, not all sales persons receive weekly draws and that defendants' timeshare persons in Florida often work in excess of forty hours per week without receiving overtime pay.  Ms. Tiger controverts defendants' representations that its Florida timeshare persons do not work in excess of forty hours a week and states that during the busy season at the two busiest operations in Florida, timeshare sales persons were required to work six days a week, resulting on average of a minimum work week of forty-six or more hours for which they did not receive overtime pay.

Plaintiffs argue that because the Tiger declaration makes it clear that defendants' FLSA violations are widespread and involve sales activity in Florida, as well as in Nevada, the court should authorize nationwide notice of the pendency of this action.  Plaintiffs have now established FLSA violations in defendants' Nevada and Florida locations which consist of approximately 58.8 percent of defendants' identified sales persons.  Thus, the court should conclude defendants have a nationwide policy of violating the overtime pay and minimum wage requirements of the FLSA.  Plaintiffs contend the defendants have not disputed that its compensation policies are nationwide and have not produced discovery to allow the plaintiffs to develop a full record on this issue.

Defendants filed a Memorandum in Opposition to the Motion to File Supplement (Dkt. #56), arguing plaintiffs have not established the evidentiary basis to allow conditional certification pursuant to § 216(b).  The declaration of Liset Rossel, the National Director of Deeding, for Westgate is attached to the opposition.  She oversees all of Westgate's deeding departments and states that this is a completely separate operation from defendants' sales department.  Closing officers "reaffirm the sale," and the closing/deeding process takes approximately forty-five minutes to one hour.  Defendants

1    reiterate the arguments raised in the opposition to the initial motion to circulate and contend closing

2    officers are not similarly situated to the named plaintiffs or the initial class proposed by the plaintiffs

3    consisting of all commission compensated timeshare sales persons.  Closing persons are not similarly

4    situated to commission compensated timeshare sales persons because they have different titles, were in

5    completely different departments, and their duties and functions are mutually exclusive.  Commissioned

6    sales personnel sell interest to prospective customers, and closing officers only have contact with

7    customers who actually purchase.  The two groups work for completely different decision makers, and

8    their compensation structures are "dramatically different."  Defendants also reiterate their arguments

9    that plaintiffs have still not submitted any evidence that putative class members in states other than

10   Florida or Nevada are subject to a common unlawful policy or practice.

11       **C.    Plaintiffs' Motion to File Second Supplement in Support of Motion to Circulate**

12            **(Dkt. #57)**

13       The second motion to supplement is supported by the declaration of Gregory Taylor who attests

14   that he was employed by the defendants from June 2006 to October 2008 at defendants' Westgate

15   Smokey Mountain Timeshare Resort in Tennessee as an independent sales agent making front-line sales

16   of real estate interests in timeshares.  The declaration affirms that while he was employed by the

17   defendants, he and all of defendants' other timeshare sales personnel were compensated on a

18   commission-only basis.  In certain weeks in which timeshare sales were not made, he and other sales

19   personnel received no compensation.  During certain periods of time, defendants' Tennessee sales

20   persons worked six days a week or typically over fifty hours per week and were not paid overtime.

21   Based on Mr. Taylor's declaration, plaintiffs assert they have now documented that over sixty-nine per

22   cent of defendants' identified sales persons are subject to a common unlawful policy or procedure

23   which violates the FLSA.  The court should, therefore, grant plaintiffs' request for nationwide

24   circulation of notice of pendency of this action.

25       Defendants' Opposition (Dkt. #66) again reiterates that the standard for conditional class

26   certification under § 216(b) has not changed and that plaintiffs have failed to established that they are

27   entitled to conditional class certification, let alone nationwide class certification.  As Mr. Taylor only

28   worked in Tennessee, he cannot provide any evidence of Westgate's compensation practices outside of

1   Tennessee, and the court should deny the motion to circulate.  The opposition is supported by the

2   declaration of Dale Campbell, the Director of Sales for Dayline Sales at Westgate's Smokey Mountain

3   Resort in Tennessee, who identifies periods of time during which timeshare sales representatives were

4   compensated on a daily draw in differing amounts during different periods of time.  Because Westgate

5   has different compensation practices at its various locations, plaintiffs cannot establish they are

6   similarly situated to the putative class for which circulation of notice is sought.  Defendants also

7   contend the number of timeshare sales personnel working in Tennessee, Nevada, and Florida is

8   "completely irrelevant" to plaintiffs' burden.

9   **II.     Legal Standard and Analysis**

10          **A.     Conditional Certification of a Collective Action**

11          Under the FLSA, an employee may initiate a class action on behalf of himself or herself and

12   other similarly situated people.  29 U.S.C. § 216(b).  The requirements for class action certification

13   under Fed. R. Civ. P. 23(a) do not apply to claims arising under the FLSA.  See Kinney Shoe Corp. v.

14   Vorhes, 564 F.2d 859, 862 (9th Cir. 1977).  The FLSA permits an action to recover minimum wages,

15   overtime compensation, liquidated damages, or injunctive relief.  Although a plaintiff may bring an

16   action on behalf of himself and others similarly situated, "no employee shall be a party to any such

17   action unless he gives his consent in writing to become such a party and such consent is filed with the

18   court in which such action is brought."  29 U.S.C. § 216(b).  This is commonly referred to as the "opt-

19   in" provision.  Generally, district courts have the discretion in appropriate cases to implement § 216(b)

20   by facilitating notice to potential plaintiffs.  Hoffmann-LaRouche, Inc. v. Sperling, 493 U.S. 165, 169

21   (1989).  The FLSA does not require certification for collective actions; however, "certification in a

22   § 216(b) collective action is an effective case management tool, allowing the court to control the notice

23   procedure, the definition of a class, the cutoff date for opting-in, and the orderly joinder of parties."

24   Edwards v. City of Long Beach, 467 F. Supp.2d 986, 989 (C.D. Cal. 2006).

25          The FLSA does not define the term "collective action," however, the Ninth Circuit has held that

26   a collective action is "an action brought by an employee or employees for and on behalf of himself or

27   themselves and other employees similarly situated."  Gray v. Swanney-McDonald, Inc., 436 F.2d

28   652, 655 (9th Cir. 1971) (quoting H. R. Rep.  No. 326, 80th Cong., 1st Sess. at 14) (internal quotations

1  omitted).  If the court finds the named plaintiffs have established that they are "similarly situated" to a

2  proposed collective action group of potential plaintiffs, the court may, in its discretion, authorize the

3  named § 216(b) plaintiffs to send notice to all of the potential plaintiffs and may set a deadline for those

4  plaintiffs to "opt in" to the suit.  Edwards, 467 F. Supp.2d at 989.

5  **B.    The Similarly Situated Requirement**

6         The court must preliminarily determine whether the potential plaintiffs are "similarly situated"

7  to create an opt-in class under § 216(b).  See Grayson v. K-Mart Corp., 79 F.3d 1086, 1097 (11th Cir.

8  1996).  A named plaintiff seeking to create a § 216(b) opt-in class must be suing on behalf of himself or

9  herself and other "similarly situated" employees.  Named plaintiffs seeking to create a § 216(b) opt-in

10  class need only show that their positions are similar, but not identical to, the positions held by putative

11  class members.  Id. (quoting Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988)),

12  aff'd in part and repealed and dismissed in part, 862 F.2d 439 (3rd Cir. 1988), aff'd, 493 U.S. 165

13  (1989)).  The similarly situated requirement of § 216(b) "is more elastic and less stringent" than the

14  joinder and severance requirements found in Rule 20 and Rule 42 respectively of the Federal Rules of

15  Civil Procedure.  Id. at 1095.

16         The FLSA does not define the term "similarly situated," and the Ninth Circuit has not yet

17  formulated a test for courts to determine whether putative class members are "similarly situated."

18  However, a number of courts, including this one, have adopted a two-step approach for determining

19  whether potential plaintiffs are "similarly situated" for purposes of conditional class certification under

20  § 216(b).  This approach involves notification to potential class members of the representative action

21  followed by a final "similarly situated" determination after discovery is completed.  At the first, or

22  "notice stage," the court relies "primarily on the pleadings and any affidavits submitted by the parties,"

23  [to decide] "whether the potential class should be given notice of the action."  Leuthold v. Destination

24  America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004).  A fairly lenient standard applies to the first step

25  determination and typically results in "conditional class certification" of a representative class.  Id. at

26  467.  A fairly lenient standard is applied because at the initial stage of a collective action case, the court

27  has "minimal evidence" to make its determination.  Mooney v. Aramco Services, Co., 54 F.3d 1207,

28  1213-14 (5th Cir. 1995); Kane v. Gage, 138 F. Supp.2d 212, 214 (D. Mass. 2001).  At the initial notice

1    stage, a plaintiff need only make substantial allegations that the putative class members were subject to

2    a single decision, policy, or plan that violated the law.  Mooney, Id. at 1214 n. 8.  However, "a unified

3    policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly

4    situated' requirement of § 216(b)".  Grayson, 79 F.3d at 1095.  The majority of courts have adopted this

5    two-tier approach.  Leuthold, Id.

6        If the court conditionally certifies a class under § 216(b) and authorizes notice to putative

7    class members, the parties conduct discovery, and once discovery is complete, the party opposing

8    class certification may move to decertify the class.  Id. at 467.  In determining whether to certify or

9    decertify the conditionally certified class, the court makes "a factual determination regarding the

10   propriety and scope of the class."  Id.  Factors the court considers in making its factual determination

11   include "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various

12   defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and

13   procedural considerations."  This determination is made after discovery is completed so that the court

14   has a complete factual record on which to base its decision whether the plaintiffs are similarly situated.

15   If the plaintiffs are not similarly situated, "then the court may decertify the class and dismiss the opt-in

16   plaintiffs without prejudice."  Id.

17       The court finds plaintiffs have made a sufficient threshold showing that they are similarly

18   situated to defendants' timeshare sales personnel and closing officers in defendants' Nevada, Florida,

19   and Tennessee locations for purposes of conditional certification and first stage notice.  The plaintiffs'

20   burden at this stage of the proceeding is light, and the court finds plaintiffs' complaint allegations,

21   coupled with the declarations supporting the motion to circulate and supplemental papers, establish that

22   sales personnel in Nevada, Florida, and Tennessee were subject to a common unlawful policy or

23   practice by being compensated on a commission-only basis which resulted in not receiving minimum

24   wage during certain weeks worked when sales were not made and/or not receiving overtime pay for

25   working in excess of forty hours per week in violation of the FLSA.  The declarations submitted in

26   support of the motion established that the named plaintiffs have been in positions similar to those of the

27   putative absent class members.  Each attests that they sold real estate interests in time shares, were

28   compensated on a strict commission-only basis, and did not receive minimum wage in weeks worked in

which sales were not made.  They each also attest that they worked in excess of forty hours per week but did not receive overtime pay and that they are familiar with the working conditions, job duties and responsibilities, conditions of employment and compensation programs of their co-workers based on their contact with and observation of them.

However, the court finds plaintiffs have not met their burden of establishing that defendants' sales personnel in other states and locations were subject to the same policy or practice.  They argue that because they have demonstrated FLSA violations occurred in Nevada, Florida, and Tennessee, and that these locations account for approximately sixty-nine per cent of defendants' sales personnel work force, the court should conclude all of defendants' sales personnel were subject to a common unlawful policy or practice.  Although the courts have clearly held that the plaintiff's burden at the notice stage is light, "unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." Freeman v. Wal-Mart, 256 F. Supp.2d 941, 945 (W.D. Ark. 2003), citing Haynes v. Singer, Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983).  Edwards, 467 F. Supp.2d at 990.  See also Bernard v. Household Intern., Inc., 231 F. Supp.2d 433, 435 (E.D. Va. 2002) ("mere allegations will not suffice; some factual evidence is necessary.")  The declarations supporting the plaintiffs' motion to circulate simply do not provide any factual evidence that defendants' timeshare sales personnel outside of Nevada, Florida, or Tennessee are similarly situated for purposes of circulation of notice of a collective action under § 216(b).

During oral argument, counsel for defendants conceded that plaintiffs had probably met their threshold showing to conditionally certify a collective action in Nevada.  However, defendants argue that the court should not conditionally certify a nationwide collective action because there is "wild disparity" between the named plaintiffs who submitted declarations and the job duties, organizational structure, and compensation plans which vary from location to location.  However, these and other arguments raised in the defendants' opposition are more appropriately advanced at the more stringent second tier analysis and raise issues that are more appropriately addressed in a motion for decertification after notice is given to the proposed class, discovery is conducted, and the court has a fully developed factual record.  The disparities in the factual employment situations of any plaintiffs who choose to opt in should be considered during the court's second tier analysis.  A number of

15

1  reasoned decisions have held that the need for individualized adjudication is more appropriately

2  addressed at the second step of this § 216(b) collective action certification analysis in a motion to

3  decertify the collective action after notice has been given and the opportunity to opt in has passed.  See,

4  e.g., Edwards, supra; Leuthold, supra.

5          For example, in Edwards, the court conditionally certified a § 216(b) collective action over

6  defendant's objections.  The named plaintiff, Edwards, brought suit on behalf of himself and between

7  900 and 1,000 police officers represented by the Long Beach Police Officers' Association.  Plaintiff

8  alleged that the department had a policy and practice of denying plaintiffs and other officers thirty-

9  minute uninterrupted meal periods.  The defendant opposed conditional class certification, pointing out

10  differences between Edwards' job duties and another potential member of the collective action.

11  Defendants presented a detailed analysis of the difference in the two officers' positions and duties and

12  the differences in their potential claims.  However, the court found the plaintiffs met their threshold

13  showing that the potential members of the § 216(b) collective action were "similarly situated" based on

14  plaintiffs' complaint allegations, and supporting affidavits and exhibits that asserted Edwards routinely

15  worked unpaid overtime in violation of the FLSA, and that his experiences were shared by members of

16  the proposed collective action.  Id. at 991. The court also found that defendants' arguments were better

17  suited for the more stringent second step of the § 216(b) collective action certification analysis in a

18  motion to decertify the § 216(b) collective action after notice had been given and the deadline to opt in

19  had passed.  Id. at 990.

20          Similarly, in Leuthold, the court applied the two-tiered approach to evaluate whether a FLSA

21  collective action should be certified to provide initial notice to prospective plaintiffs followed by a final

22  evaluation whether plaintiffs who opted in were similarly situated.  There, the plaintiffs sought FLSA

23  collective action certification pursuant to § 216(b) on behalf of a class consisting of all current or

24  former tour directors of two separate, but interrelated companies who worked or resided in the United

25  States while working for the companies.  Although finding it a close question given the extensive

26  discovery that had already taken place, the court determined notice should be sent to the proposed class

27  for several reasons.  Id. at 468. First, although extensive discovery had taken place, there were

28  numerous discovery disputes and it was unclear to the district court whether a complete factual record

1    had been developed and presented.  Id.   Second, the majority two-tier approach contemplates a

2    progression in which the court first reaches the threshold question whether conditional certification and

3    notice are appropriate, and then applies more rigorous analysis in a motion to decertify the class.  Id.

4         Applying the more lenient first tier analysis, the Leuthold court found the plaintiffs had met

5    their threshold burden by making substantial allegations that the putative class members were subject to

6    a single illegal policy, plan or decision.  Id.  The plaintiffs' complaint allegations that tour directors and

7    tour managers employed by defendants had not been paid overtime wages, together with plaintiffs'

8    affidavits which described their job duties, asserted that they often worked more than forty hours per

9    week without overtime pay, and claimed that their experiences were common to the proposed class

10   were enough to support this threshold showing.  Id.  The Leuthold court noted that the number and type

11   of plaintiffs who chose to opt in to the class might affect the court's second tier inquiry concerning the

12   disparate factual and employment situations of the opt in plaintiffs, and that bypassing the first tier

13   notice stage potentially prejudiced the plaintiffs.  Specifically, the Leuthold decision found that

14   bypassing the first step of the analysis would "deprive the court of information and might deprive some

15   plaintiffs of a meaningful opportunity to participate."  Id.

16        Finally, defendants argue that the court should deny conditional certification because plaintiffs

17   have not shown that there are other putative class members who wish to opt in to this conditionally

18   certified class action.  Defendants correctly point out that a number of courts have held that named

19   plaintiffs must proffer some evidence that other similarly situated individuals desire to opt in to the

20   litigation before putting the parties to the expense and effort of notice to a conditionally certified class

21   of claimants.  See Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991);

22   see also Mueller v. CBS, Inc., 201 F.R.D. 425, 428 (W.D. PA. 2001).  However, other courts–including

23   the Ninth Circuit–have recognized that requiring named plaintiffs to proffer evidence that others desire

24   to opt in to a § 216(b) conditional class before sending notice to potential class members puts the

25   named plaintiff is the "ultimate chicken and egg dilemma."  See Kinney Shoe Corp., 564 F.2d 589 (9th

26   Cir. 1977), abrogated on other grounds, Hoffmann-La Roche Inc. v. Sperling, 496 U.S. 165 (1989);

27   Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 406 (D.N.J. 1988); Severtson v. Phillips Beverage

28   Co., 137 F.R.D. 264, 267 (D. MN. 1991).

1    The court is mindful of the burden and expense that conditional certification of a collective

2  action has on defendants.  However, there are countervailing policy considerations at issue.  The

3  primary objective of § 216(b) collective action certification is to lower costs and limit the controversy

4  to one proceeding.  Congress passed the FLSA to create a uniform national policy for wage and hour

5  laws.  Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 741 (1981).  Section 216(b)'s opt in

6  requirement was designed to limit the potentially enormous size of FLSA representative actions.

7  Hoffman-La Roche, 495 U.S. at 487.  Court-supervised notice of pendency of § 216(b) actions "serves

8  the legitimate goal of avoiding a multiplicity of duplicative suits in setting cutoff dates to expedite

9  disposition of the action."  Id.  Additionally, plaintiffs' counsel is ethically barred from engaging in

10  champerty and maintenance, and he risks running afoul of his ethical obligations by engaging in

11  practices which could be regarded as soliciting putative class members.  Thus, this court finds the

12  plaintiffs' failure to demonstrate that there are other similarly situated employees who wish to

13  opt in to this FLSA action for overtime wages does not, of itself, constitute sufficient grounds to defeat

14  the motion.

15    In summary, the court finds plaintiffs have made a sufficient showing that defendants'

16  commission-only sales personnel and closing officers in Nevada, Florida, and Tennessee were subjected

17  to a common unlawful policy or practice and were neither compensated overtime for hours worked in

18  excess of forty hours per week nor paid minimum wage during certain weeks in which they made no or

19  too few commissioned sales.  However, the court finds plaintiffs have not met their burden of

20  establishing that sales personnel and closing officers who worked at defendants' other nationwide

21  locations are similarly situated to the named plaintiffs.  The court will approve circulation of a notice of

22  pendency of this action for all sales personnel and closing officers who worked for defendants in

23  Nevada, Florida, and Tennessee who were compensated on a commission-only basis and did not receive

24  minimum wage or overtime pay within three years of the date of filing of this complaint.

25    Finally, in conditionally certifying this collective action in Nevada, Florida, and Tennessee, the

26  court does not condone the manner in which counsel for plaintiffs presented the motion with multiple

27  / / /

28  / / /

18

1   requests to supplement and expand the scope of the proposed class.  Defendants correctly point out that

2   plaintiffs' proposed class has substantially evolved since the initial complaint was filed and the initial

3   motion to circulate was filed.  The Supreme Court has made it clear that while the district court has the

4   discretion to conditionally certify a collective action under the FLSA, conditional certification is not

5   mandatory.  Hoffman-La Roche, 495 U.S. at 170.  Conditional certification of a collective action is a

6   case management tool "intended to serve the interests of judicial economy and to aid in the vindication

7   of plaintiff's rights."  Freeman, 456 F. Supp.2d at 944.  Plaintiffs' multiple filings over many months

8   have made this case more difficult to manage rather than less and have not promoted the interests of

9   judicial economy to accomplish joinder of additional parties in an efficient and prompt manner.

10  However, as noted *infra*, because the plaintiffs have been granted leave to amend the complaint twice,

11  the court has considered the supplemental papers in an effort to close the pleadings and move to the

12  discovery phase and the second phase analysis needed to determine whether the conditionally certified

13  class should be certified or decertified.

14          **B.**   **Notice**

15          Plaintiffs further request that the court approve the form of notice attached as Exhibit "B" to the

16  motion to circulate.  Defendants ask that if the court grants the motion to circulate, the proposed notice

17  be revised for clarity, efficiency and fairness and that the court require the parties to meet and confer in

18  an attempt to arrive at a mutually agreeable form of notice.  The defendants' request is granted, and

19  counsel for the parties shall meet and confer in a good faith effort to arrive at a mutually acceptable

20  form of notice consistent with this order.  The court denies plaintiffs' request for four separate forms of

21  notice, and circulation is limited to notice by U.S. Mail and e-mail.  Plaintiffs will bear the cost for

22  providing notice.  Finally, the parties disagree on a reasonable notification period.  Plaintiffs ask for one

23  hundred twenty days, citing the transient nature of the sales work force.  Defendants ask for a forty-five

24  to sixty-day opt-in period but acknowledge high turnover of its timeshare sales workers.  The court will

25  allow ninety days from circulation of the notice of pendency for the potential plaintiffs to opt in.  The

26  defendants will have eighteen days from entry of this order in which to provide plaintiffs' counsel with

27  / / /

28  / / /

1    a list of names and addresses of defendants' timeshare sales personnel and closing officers in Nevada,

2    Florida, and Tennessee working within three years of the date of filing of the complaint.  Counsel for

3    plaintiffs shall have ten days in which to circulate the notice from receipt of the names and addresses of

4    the putative class members.

5            **C.**      **Tolling of Statute of Limitations**

6          Plaintiffs request that the court toll the statute of limitations for the period of time this Motion to

7    circulate has been pending.  In <u>Alvarez-Machain v. United States</u>, 107 F.3d 696, 701 (9th Cir. 1996),

8    the Ninth Circuit recognized that federal courts have applied the doctrine of equitable tolling in two

9    situations: (1) when the plaintiffs are prevented from asserting their claims by some kind of wrongful

10   conduct on the part of the defendant; or (2) when extraordinary circumstances beyond plaintiffs' control

11   make it impossible to file the claims on time.  Here, there is no suggestion in the record that any of the

12   potential plaintiffs have been prevented from asserting their claims by some type of wrongful conduct

13   on the part of the defendants or that there are extraordinary circumstances beyond the potential class

14   members' control that make it impossible to file their claims on time.  Additionally, the ever evolving

15   nature of the plaintiffs' claims and amendments of the complaint and multiple filings in this action have

16   been responsible for the delay in deciding this matter.  The court, therefore, denies the plaintiffs'

17   request to toll the statute of limitations.

18                        **<u>CONCLUSION</u>**

19          The court finds the plaintiffs have met their threshold burden to conditionally certify and

20   provide notice of pendency of this action and have made substantial allegations that they are similarly

21   situated to putative class members who were subject to a single decision, policy, or plan that violated

22   the FLSA.  The court, therefore, approves the notice of pendency of this action to all individuals who

23   work for defendants as sales personnel or closing officers in Nevada, Florida, and Tennessee within

24   three years of the filing of the complaint.  However, plaintiffs have not made a sufficient showing that

25   they are similarly situated to sales personnel in other states, and nationwide circulation of notice is

26   denied.

27   / / /

28   / / /

Having reviewed and considered the matter, and for the reasons stated,

**IT IS ORDERED:**

1.      Plaintiffs' Motion for a Circulation of Notice of the Pendency of this action (Dkt. #10) is GRANTED in part and DENIED in part consistent with the provisions of this order.

2.      Counsel for the parties shall meet and confer in a good faith effort to arrive at a mutually acceptable form of notice, and shall submit a stipulation and proposed form of order **no later than January 22, 2009** in the event they are able to agree.  In the event they are unable to agree, counsel shall have until **January 22, 2009** in which to submit a joint report identifying the portions of the notice on which they are unable to agree, and their competing proposals with respect to any portions of the notice on which they are unable to agree.

3.      Notice of pendency of this action shall be sent to all timeshare sales personnel and closing officers working in defendants' Nevada, Florida, or Tennessee locations within three years of the date of filing of the complaint who were paid on a commission-only basis and were not compensated minimum wage or overtime.

4.      The defendants shall have until **January 30, 2009** in which to provide counsel for plaintiffs with the names, addresses, phone numbers, and e-mail addresses of the proposed class members.

5.      Counsel for Plaintiff shall have ten days from receipt of the names and addresses of putative class members in which to circulate the notice at plaintiffs' counsel's expense.

6.      Putative class members shall have ninety days from circulation of the notice of pendency in which to opt in to this action.

7.      Plaintiff's request to notify the putative class members via e-mail and U.S. Mail is GRANTED.

8.      Plaintiff's request to notify the putative class members via conspicuous posting of the notice at defendant's work locations and in an employees' newsletter publication is DENIED.

/ / /

9 .    Plaintiff's Motion to Supplement (Dkt. # 16) is GRANTED.

10.    Plaintiff's Motion to Strike (Dkt. # 37) is DENIED.

11.    Plaintiff's Motion to File Supplement (Dkt. #49) is GRANTED in part and DENIED In part consistent with the provisions of this order.

12.    Plaintiffs' Motion to File Second Supplement (Dkt. #57) is GRANTED in part and DENIED in part consistent with the provisions of this order.

Dated this 12th day of January, 2009.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE