UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| THOMAS DAVIS III, et al, | )<br>) |
| Plaintiffs, | )<br>)   2:08-cv-00722-RCJ-PAL |
| vs. | )<br>) |
| WESTGATE PLANET HOLLYWOOD LAS VEGAS, LLC et al., | )   **ORDER**<br>)<br>) |
| Defendants. | )<br>) |

The present lawsuit is a collective action brought by former employees of Defendants for alleged failure to pay overtime, minimum wages, and commissions. Before the Court is Defendants' Motion to Enjoin Plaintiffs from Soliciting Opt-in Plaintiffs Through Plaintiffs' Counsel's Unauthorized Website; to Shut Down Website and for Contempt and Sanctions (#224). Plaintiffs have filed a Response (#236), and Defendants have filed a Reply (#252). For the following reasons, the Court grants the Motion (#224) in part.

**I.  FACTS AND PROCEDURAL HISTORY**

Defendants Westgate Planet Hollywood Las Vegas, LLC, Westgate Resorts, Inc., Westgate Resorts Ltd., CFI Sales & Marketing, Ltd., CFI Sales & Marketing, LLC, CFI Sales & Marketing, Inc. (collectively, "Westgate") are business entities engaged in the development, marketing, management, and sales of fractional interests in time share condominiums and resorts. Plaintiff Thomas Davis III was formerly employed by Defendants as a salesperson in Westgate's Las Vegas time share sales business. After several years of employment, Davis, who had been paid on a flat

commission system, determined that Westgate had failed to pay him overtime pay for working in excess of forty hours a week and a proper minimum wage. Davis also believed that Westgate had made improper deductions from his pay and/or had not paid Davis commissions that he was owed.

On May 13, 2008, Davis filed the original Complaint, individually and on behalf of all others similarly situated, in the District Court of Clark County, Nevada, alleging five causes of action: (1) violations of the Fair Labor Standards Act ("FLSA") for Westgate's failure to pay minimum wages and overtime pay; (2) violations of Nevada's labor laws (NRS §§ 608.016, 608.018, 608.109, 608.100, and 608.250) for unpaid wages, unpaid minimum and overtime wages, and unpaid rest periods; (3) violations of NRS § 608.040 for unpaid wages owed after discharge; (4) breach of contract; and (5) conversion. (#1, Ex. A). The original Complaint alleged that there are "at least 1000 putative class members nationwide and over 500 Nevada Subclass members." (*See id.* at ¶ 18). In addition to the FLSA collective action class, Davis sought class certification for the state law actions. On June 4, 2008, Westgate removed the case to this Court pursuant to 28 U.S.C. § 1331 based on Davis's FLSA cause of action. (#1). Alternatively, Westgate alleged that there was federal jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). (*See id.*).

On July 7, 2008, Plaintiffs filed a Motion for Circulation of Notice of the Pendency of this Action Pursuant to 29 U.S.C. § 216(b) and For Other Relief (#10). The Court heard oral arguments on that motion on September 9, 2008. The Court issued two orders concerning circulation of notice. (#75, #150). On January 12, 2009, the Court granted the motion (#10) in part and denied it in part, ("the Order"), certifying a collective action as to commission-only sales personnel and closing officers in Nevada, Florida, and Tennessee and permitting solicitation of opt-in plaintiffs for ninety days via email and U.S. Mail, but not via postings at work locations or in newsletters. The order read in relevant part:

> In summary, the court finds plaintiffs have made a sufficient showing that defendants' commission-only sales personnel and closing officers in Nevada, Florida, and Tennessee were subjected to a common unlawful policy or practice and

were neither compensated overtime for hours worked in excess of forty hours per week nor paid minimum wage during certain weeks in which they made no or too few commissioned sales. However, the court finds plaintiffs have not met their burden of establishing that sales personnel and closing officers who worked at defendants' other nationwide locations are similarly situated to the named plaintiffs. The court will approve circulation of a notice of pendency of this action for all sales personnel and closing officers who worked for defendants in Nevada, Florida, and Tennessee who were compensated on a commission-only basis and did not receive minimum wage or overtime pay within three years of the date of filing of this complaint.

Finally, in conditionally certifying this collective action in Nevada, Florida, and Tennessee, the court does not condone the manner in which counsel for plaintiffs presented the motion with multiple requests to supplement and expand the scope of the proposed class. Defendants correctly point out that plaintiffs' proposed class has substantially evolved since the initial complaint was filed and the initial motion to circulate was filed. The Supreme Court has made it clear that while the district court has the discretion to conditionally certify a collective action under the FLSA, conditional certification is not mandatory. Conditional certification of a collective action is a case management tool "intended to serve the interests of judicial economy and to aid in the vindication of plaintiff's rights." Plaintiffs' multiple filings over many months have made this case more difficult to manage rather than less and have not promoted the interests of judicial economy to accomplish joinder of additional parties in an efficient and prompt manner.

. . . .

Plaintiffs further request that the court approve the form of notice attached as Exhibit "B" to the motion to circulate. Defendants ask that if the court grants the motion to circulate, the proposed notice be revised for clarity, efficiency and fairness and that the court require the parties to meet and confer in an attempt to arrive at a mutually agreeable form of notice. The defendants' request is granted, and counsel for the parties shall meet and confer in a good faith effort to arrive at a mutually acceptable form of notice consistent with this order. ***The court denies plaintiffs' request for four separate forms of notice, and circulation is limited to notice by U.S. Mail and e-mail***. Plaintiffs will bear the cost for providing notice. Finally, the parties disagree on a reasonable notification period. Plaintiffs ask for one hundred twenty days, citing the transient nature of the sales work force. Defendants ask for a forty-five to sixty-day opt-in period but acknowledge high turnover of its timeshare sales workers. ***The court will allow ninety days from circulation of the notice of pendency for the potential plaintiffs to opt in.***

. . . .

7. Plaintiff's request to notify the putative class members via e-mail and U.S. Mail is GRANTED.

        8. Plaintiff's request to notify the putative class members via conspicuous posting of the notice at defendant's work locations and in an employees' newsletter publication is DENIED.

(#75 at 18–21) (emphases added) (citations omitted). On May 19, 2009, the Court ordered that a second notice of pendency be sent to sales personnel and closing officers in Nevada, Florida, and Tennessee who were paid by commission-only or who did not receive minimum wage or overtime pay. (#150 at 4).

In the present Motion (#224), Defendants bring to the Court's attention a website, www.westgatelawsuit.com ("the Website"), which was created on October 7, 2008 and is registered to Leon Greenberg Professional Corporation. (#224 at 4:23–5:4). The website was created three months after Plaintiffs filed the Motion for Circulation (#10), one month after the Court heard oral arguments on that motion, and three months before the Court certified a notice class and granted permission for circulation in accordance with the first order (#75). When first discovered by Defendants in August 2009, the website stated:

> Currently this case is pending in the Federal District Court of Nevada . . . . Because Federal overtime law covers all workers throughout the country, the case in Nevada can be expanded to cover all Westgate workers throughout the country. But the Court may refuse to do that UNLESS some Westgate workers from other states come forward and advise the Court that they are owed unpaid overtime for work they did outside of Nevada.

(#224, 5:19–22 (quoting *Id.*, Ex. A)). The Website also includes an opt-in form that is different from the form the Court authorized. (*Id.*, Ex. B). Defendants claim that a substantial number of consent forms filed on May 20–21, 2009 are identical to the one provided on the Website and do not use the form accompanying Court-approved notice. (*Id.*, Ex. E).

Defendants sent Plaintiffs' counsel a cease-and-desist letter on August 5, 2009, requesting that they take down the Website by August 10, 2009, but they did not. Defendants note that only after Plaintiff's counsel was sent the cease and desist letter did they "hurriedly and substantially edit[]" the website to indicate the collective action was limited to Nevada, Florida, and Tennessee

1 employees, the deadline for filing consents, and that the Court has yet to determine that Westgate
2 actually owes overtime wages. (#252 at 10:3–11). Finally, Defendants argue that the Website fails
3 to conform with the rules of professional conduct of many of the states where it is accessible or to
4 which it is targeted.

5        Defendants ask the Court to: (1) find Plaintiffs and their counsel in contempt of the Orders;
6 (2) compel Plaintiffs to shut down the Website and enjoin them from creating other similar websites
7 or seeking notice outside of the Court-approved methods; (3) direct Plaintiffs and their counsel to
8 identify putative class members who visited the Website, downloaded the consent form, sent the
9 consent forms in, sought information about the action through the website, and/or retained the
10 services of Plaintiffs' counsel because of the website; (4) strike all opt-in consent forms derived
11 from the Website; (5) order Plaintiffs to provide the Court and Defendants with any proposed future
12 communication with the putative class members who have yet to opt in or whose consents are
13 stricken; (6) suspend discovery limitations on Westgate's discovery as to opt-in Plaintiffs; (7) award
14 Westgate fees and costs associated with the present Motion (#224); and (8) if the Court declines to
15 order these measures, then to grant Westgate an opportunity to contact the persons who filed opt-in
16 forms derived from the Website at Plaintiffs' expense to dispel alleged misstatements in the Website
17 and to post its response on the Website.

18 **II.     LEGAL STANDARDS**

19        Defendants ask the Court to hold Plaintiffs' counsel in contempt.  Although Defendants do
20 not identify the source of the power they intend to invoke, they clearly invoke the federal contempt
21 power under 18 U.S.C. § 401(3) or the Court's inherent power, as opposed to sanctions under
22 Federal Rules of Civil Procedure 11 or 37.

23        The criminal contempt power is statutory.  "A court of the United States shall have the power
24 to punish by fine or imprisonment, at is discretion, such contempt of its authority and none other,
25 as . . . (3) Disobedience or resistance to its lawful write, process, order, rule, decree, or command."

§ 401(3). "The criminal contempt power enables judges to fine or imprison persons who willfully violate court orders. Intent is an essential element that must be proved beyond a reasonable doubt." *Yagman v. Republic Ins.*, 987 F.2d 622, 629 (9th Cir. 1993) (quoting *FTC v. Am. Nat'l Cellular*, 868 F.2d 315, 321 (9th Cir. 1989)). A person may not escape criminal contempt by twisted interpretations or tortured constructions of provisions of a court order. *United States v. Greyhound Corp.*, 508 F.2d 529, 532 (7th Cir. 1974). If a person has doubts about his obligations under an order, he may petition the court for clarification of the order. *Id*. (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949)). Failure to petition for clarification combined with actions based upon a "twisted or implausible" interpretation of the order is strong evidence of a willful violation. *Id.* (citing *FTC v. Gladstone*, 450 F.2d 913, 915 (5th Cir. 1971); *United States v. Tijerina*, 412 F.2d 661, 667 (10th Cir. 1969)). Actions showing a good-faith effort to comply with an order tend to negate willfulness. *Id.* However, delaying tactics, indifference to the order, or mere "paper compliance" will support a finding of willfulness. *Id.*

The Court's civil contempt power does not derive from statute, but is inherent. *Cal. Dep't Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). As opposed to criminal contempt, civil contempt may be proved by clear and convincing evidence, and willfulness need not be shown. *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183 (D.C. Cir. 1981). A district court's invocation of the contempt power is reviewed for an abuse of discretion. *Id.* (citing *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984)).

### III.  ANALYSIS

Plaintiffs make two basic arguments. First Plaintiffs argue that because the Court did not specifically order that websites could not be used to advertise for opt-in Plaintiffs, and because they have conducted email and U.S. Mail notice as directed by the Court, that their use of the Website for general advertising in addition to court-approved notice did not violate the Orders. Second, Plaintiffs argue that the Court's power to control their activities concerning contacting potential

plaintiffs extends to solicitation of individual potential clients, but not to general advertising. Plaintiffs argue that they have "solicited" no one because the advertisements were not targeted to specific individuals and are otherwise constitutionally protected. (#236 at 2–3). Plaintiffs argue that because an outdoor billboard displaying the information displayed on the Website would be a constitutionally protected advertisement, that the Website is also protected and hence does not violate the Orders.

### A. Interpretation of the Court's Order

Plaintiffs' first argument is a non-sequitur, equivalent to a child arguing that because his mother told him he could have a sugar cookie but not an oatmeal cookie, that this implies through silence that he may also have a chocolate chip cookie, or any other treat he can think of besides an oatmeal cookie. This is the "you didn't say I couldn't do that" argument. This argument is invalid if permission is required to act from the beginning. Plaintiffs' counsel in this case specifically requested permission to circulate notice and took the Court's and Defendants' time to resolve the issue. The Court granted permission to circulate notice via email and U.S. Mail and denied permission to circulate notice via employee newsletters and workplace postings. (#75). The denial extended to general advertisements via newsletters and postings at workplaces. The distinction between direct solicitation and general advertising is therefore not helpful in light of language of the Order (#75), which addressed and prohibited general advertising via newsletter and workplace postings. If Plaintiffs' counsel honestly believed that the default rule provided for permissive notice limited only by the Court's specific restrictions, it is odd that they would have filed for permission to circulate notice in particular ways in the first place. (#10). The very act of filing for permission is evidence of a guilty mind as to actions taken outside of the process, both before and after permission was partially granted and partially denied. Also, a party acting in good faith to conduct opt-in notification in compliance with the Court's direction would be expected to have notified the Court of the existence of its Website advertisements. Whether the Website constitutes solicitation

versus advertisement is totally beside the point.  Compliance with the Court's Order (#75) does not turn on whether the activity complied with the Nevada State Bar's regulations of face-to-face client solicitation versus constitutionally protected general advertising.  Nor does it turn on whether the Website was constitutionally protected speech.

In the context of a contempt order, the Court need not determine whether its original Order violated constitutional protections, because Plaintiffs failed to challenge the Order before violating it.  Plaintiffs themselves acknowledged the Court's power to control the notice procedure by invoking the Court's authority to rule on the issue. (#10).  It is within the Court's power to control the notification process. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171–72 (1989).  The Court's power to control the notice process in the absence of specific statutory direction stems from Rule 83. *Id.* at 172 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n.10 (1981); Fed. R. Civ. P. 83).  The *Sperling* Court called this authority "well settled." *Id.*  The restrictions in the Order were clear, and no reasonable interpretation of the Order could lead Plaintiff's counsel to believe that additional notice was permitted simply because it was not specifically prohibited in the Order.  A court could not possibly list all possible forms of communication in an Order for specific prohibition.  Plaintiffs invoked the Court's power to decide what kind of notification was permissible.

Ultimately, the issue is not whether Plaintiffs have the right to solicit or advertise for opt-in Plaintiffs outside of the control of the Court from the beginning, but respect for the Court's Order once issued.  If Plaintiffs believed they had the right to solicit or advertise for opt-in clients without being subject to the Court's control, which they invoked, or if they were otherwise confused about the Order, counsel had a duty to challenge the Order directly or request clarification.  But counsel cannot take it upon themselves to violate a court order without challenging it, even if there would be merit to the objection, and then rely on a collateral attack later to protect them from being held in contempt. *Walker v. City of Birmingham*, 388 U.S. 307, 220 (1967).  This is what Plaintiffs' counsel apparently did.  It is apparent from the time line of the operation of the Website that

1 Plaintiffs' counsel intended from the beginning—and then continued after, and in spite of, the
2 Order—to operate the Website outside of the Court-controlled notice procedure in order to notify
3 potential clients of the pending action. Plaintiffs' counsel's argument that the Website constitutes
4 general advertising for legal services, and not client solicitation of a particular client or class of
5 clients in relation to a particular legal need is both incorrect[1] and irrelevant.

### B. Constitutionally Protected Advertising

7 Advertising for "routine legal services" cannot be prohibited. *Bates v. State Bar of Ariz.*, 433
8 U.S. 350, 384 (1977). But certain limitations are permissible, including prohibitions on "false,
9 deceptive, or misleading" advertising; reasonable "time, place, and manner" restrictions; and
10 "special consideration" due to the "special problems" of electronic media. *Id.* at 383–84.
11 Reasonable restrictions on attorney advertising must meet the *Central Hudson* test for reasonable
12 restrictions on commercial speech. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623–24 (1995).
13 Under *Central Hudson*, false or misleading commercial speech may be regulated. *C. Hudson Gas*
14 *& Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563–64 (1980). Truthful commercial
15 speech may be regulated under the following test: (1) there must be a substantial interest in support
16 of the regulation; (2) the government must demonstrate that the restriction directly and materially
17 advances the interest; and (3) the regulation must be "narrowly drawn." *Id.* at 564–65.

18 Plaintiffs argue that their Website is protected under *Bates*. Defendants argue that the
19 Website is not protected under *Bates*, but rather is "misleading or false," because prior to the recent
20 alterations, the website indicated that the class was not restricted to Nevada, Florida or Tennessee
21 employees, did not include the deadline for filing consent forms, and failed to indicate clearly that

---

[1] It is not "general advertising" to advertise for plaintiffs for a particular controversy, as opposed to advertising for plaintiffs to a particular kind of case (personal injury or DUI defense). The former is solicitation, whether face-to-face, on a billboard, or on a website.

1  Defendants had not yet been held liable. Neither party addresses the three-prong *Central Hudson*
2  test.

3  Defendants cite to *Howard v. Securitas Sec. Servs. USA Inc.* for the proposition that a
4  website cannot contradict the clear terms of court-approved notice. 630 F. Supp. 2d 905, 909–10
5  (N.D. Ill. 2007). In that FLSA case, the court found that the plaintiffs' counsel's websites did not
6  contain inappropriate or misleading communications in conflict with court-approved notice. *Id.* at
7  908. The *Securitas* court distinguished that case from *Jones v. Casey's Gen. Stores*, 517 F. Supp.
8  2d 1080 (N.D. Iowa 2007), where "the presentation of the 'goals' of the litigation and 'updates' on
9  the case inappropriately implied that liability had already been settled." 630 F. Supp. 2d at 907
10 (quoting *Jones*, 517 F. Supp. 2d at 1088). In *Securitas*, unlike in *Jones*, (1) a class had already been
11 certified, and (2) the court's notice to putative opt-in plaintiffs, which had been approved by both
12 parties, itself disclosed the later-challenged website addresses. *Id.* at 908. In *Securitas*, the court
13 noted that it had previously ordered the plaintiffs to adjust their websites to correct statements made
14 as facts which were only allegations. *Id.* at 909. The court reaffirmed its previous order, but
15 declined to rule that the parts of the websites listing "goals" were infirm. *Id.* It also found that the
16 websites were not misleading for failing to disclose that potential plaintiffs could opt out or retain
17 other counsel, because that information was in the mailed notice and was linked to on the websites.
18 *Id.* The court granted the defendant's motion to the extent it has already granted it and otherwise
19 denied it. *Id.*

20 Here, the Website—until the recent changes enacted after receipt of Defendants' August
21 2009 letter—improperly implied that the scope of the litigation was not limited to Nevada, Florida,
22 and Tennessee. Therefore, even without the precedent of *Walker*, the Court may hold Plaintiffs'
23 counsel in contempt for this activity. The Website noted that the case was "pending," so it was not
24 misleading, but only unclear, as to whether liability had been established.

25

**C.     Rules of Professional Conduct**

Finally, Plaintiffs argue that alleged ethical violations should be directed to the disciplinary committees of the state bars where Plaintiffs' counsel are admitted to practice, not to the U.S. District Court. This is partially correct. Those disciplinary committees may appropriately consider this activity. But attorneys practicing in the district court are also subject to the Court's sanction power for violations of the Model Rules of Professional Conduct as adopted by the Nevada Supreme Court. L.R. IA 10-7. Punishment for such a violation may include disbarment, suspension, reprimand, or "other discipline." *Id.* Rule 7.1 of the Nevada Rules of Professional Conduct prohibits "false or misleading communication about the lawyer or the lawyer's services" and defines "false or misleading" as *inter alia* "likely to create an unjustified or unreasonable expectation about results . . . which shall be considered inherently misleading for the purposes of this Rule . . . ." Nev. R. Prof. Conduct 7.1(b). The statement that "the case in Nevada can be expanded to cover all Westgate workers throughout the country," which remained on the Website long after the Orders made it clear this was not the case, is a palpable violation of Rule 7.1.

Because the Court finds that they have violated both this Court's Order and, moreover, Rule 7.1(b) of the Nevada Rules of Professional Conduct, the Court in its discretion sanctions Plaintiffs' counsel as outlined below.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion (#224) is GRANTED in part and DENIED in part, as follows:

1. Plaintiffs and their counsel are not held in contempt and are not required to shut down the Website.

2. Plaintiffs' counsel is ordered to identify to Defendants in good faith: (a) which opt-in Plaintiffs visited the website or contacted Plaintiffs' counsel based on the Website, (b) which opt-in Plaintiffs downloaded the consent

form from the Website, and (c) which opt-in Plaintiffs sent the consent forms provided on the Website to Plaintiffs' counsel—in short, all opt-in Plaintiffs and putative class members who are "fruits" of the Website.

3. The Court will not at this time strike consent forms derived from the Website, but Defendants reserve the right to move to strike them.

4. Any discovery limitations currently in force against Defendants preventing them from discovering information concerning opt-in Plaintiffs is hereby lifted.

5. The Court reserves judgment on the request for fees and costs associated with the present Motion (#224).

DATED:   November 18, 2009

_____
Robert C. Jones
United States District Judge