**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THOMAS DAVIS III et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 2:08-cv-00722-RCJ-PAL |
| vs. ) | |
| ) | **AMENDED ORDER** |
| WESTGATE PLANET HOLLYWOOD LAS ) | |
| VEGAS, LLC et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The present lawsuit is a class action brought by former employees of Defendants for alleged failure to pay overtime, minimum wages, and commissions. Before the Court are Defendants' Motion to Compel (#285), Plaintiffs' Motion to Clarify (#286), and Defendants' Motion to Dismiss Rick Brunton as a Named Plaintiff (#294). For the following reasons, the Court grants the motions in part and denies them in part, as explained, *infra*.

**I.    FACTS AND PROCEDURAL HISTORY**

Defendants Westgate Planet Hollywood Las Vegas, LLC; Westgate Resorts, Inc.; Westgate Resorts Ltd.; CFI Sales & Marketing, Ltd.; CFI Sales & Marketing, LLC; and CFI Sales & Marketing, Inc. (collectively, "Westgate") are business entities engaged in the development, marketing, management, and sales of fractional interests in time share condominiums and resorts. Plaintiff Thomas Davis III was formerly employed by Defendants as a salesperson in Westgate's Las Vegas time share sales business. After several years of employment, Davis, who had been paid on a flat commission system, determined that Westgate had failed to pay him either overtime pay for

working in excess of forty hours a week or a proper minimum wage. Davis also believed that Westgate had made improper deductions from his pay and had not paid him commissions he was owed.

On May 13, 2008, Plaintiff Davis filed the original Complaint, individually and on behalf of all others similarly situated, in the District Court of Clark County, Nevada, alleging five causes of action: (1) alleged violations of the Fair Labor Standards Act ("FLSA") for Westgate's failure to pay minimum wages and overtime; (2) alleged violations of Nevada's labor laws (NRS §§ 608.016, 608.018, 608.109, 608.100, and 608.250) for unpaid wages, unpaid minimum and overtime wages, and unpaid rest periods; (3) alleged violations of NRS § 608.040 for unpaid wages owed after discharge; (4) alleged breach of contract; and (5) alleged conversion. (#1, Ex. A). The original Complaint alleged that there were "at least 1000 putative class members nationwide and over 500 Nevada Subclass members." (*See id.* at ¶ 18). In addition to the FLSA collective action class, Davis sought class certification for the state law actions. On June 4, 2008, Westgate removed the case to federal court pursuant to 28 U.S.C. § 1331, based on Davis's FLSA cause of action. (#1). Alternatively, Westgate alleged that there was federal jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). (*See id.*). Plaintiffs have amended the Complaint twice.

On November 19, 2009, the Court issued an order (the "Order") imposing certain sanctions on Plaintiffs' counsel for actions counsel took in circumvention of the Court's control of the notice procedure and for making false or misleading statements to putative plaintiffs via a website. The Order, in relevant part, commanded the following:

> 2. Plaintiffs' counsel is ordered to identify to Defendants in good faith: (a) which opt-in Plaintiffs visited the website or contacted Plaintiffs' counsel based on the Website, (b) which opt-in Plaintiffs downloaded the consent form from the Website, and (c) which opt-in Plaintiffs sent the consent forms provided on the Website to Plaintiffs' counsel—in short, all opt-in Plaintiffs and putative class members who are "fruits" of the Website.

    3. The Court will not at this time strike consent forms derived from the Website, but Defendants reserve the right to move to strike them.

    4. Any discovery limitations currently in force against Defendants preventing them from discovering information concerning opt-in Plaintiffs is hereby lifted.

(#269 at 11:23–12:10). In their Motion to Compel (#285), Defendants argue that Plaintiffs have failed to comply with paragraph 4 of the Order. Instead of responding directly, Plaintiffs have filed a Motion for Reargument on Previous Motion to Enjoin Website for Purpose of Clarifying and Amending the Court's Order (#286). Although this could be interpreted as either a motion for reconsideration or a motion to clarify, Plaintiffs indicate in the order that "Plaintiffs do ***not*** burden the Court with a request for a review of the findings of fact or conclusions of law reached in [the] Order, only a review and clarification or amendment of the relief directed by such Order." (#286 at 2:5–8). Therefore, the Court will treat the Motion (#286) both as a motion for clarification, and as a response to the Motion to Compel (#285).

**II.     LEGAL STANDARDS**

    **A.     Rule 45**

A party may "[a]t any time, on notice to the commanded person . . . move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2)(B)(i).

    **B.     Rule 37**

Rule 37 of the Federal Rules of Civil Procedure permits a court to impose sanctions against a party or the party's attorney for discovery violations. Sanctions may imposed if a party fails to comply with a discovery order, Fed. R. Civ. P. 37(b)(2)(A), or if a party "fails to provide information or to identify a witness as required by Rule 26(a) or (e)," Fed. R. Civ. P. 37(c)(1). In the latter case, the culpable party "is not allowed to use" the undisclosed information or witness as evidence, unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Additionally, a court has the discretion after a motion and hearing to: (1) order payment of reasonable expenses, including

attorney's fees, caused by the failure; (2) inform the jury of the failure; and (3) impose other appropriate sanctions, including any of those listed in Rule 37(b)(2)(A)(i)–(vi). Fed. R. Civ. P. 37(c)(1)(A)–(C). The potential sanctions listed in Rule 37(b)(2)(A)(i)–(vi) include: (1) directing that the matters encompassed by the discovery failures be taken as established; (2) prohibiting the culpable party from supporting or opposing relevant claims or defenses; (3) striking pleadings; (4) staying proceedings until compliance; (5) dismissing the action in whole or in part; or (6) rendering a default judgment against the culpable party. Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi).

The imposition of or refusal to impose discovery sanctions is reviewed for an abuse of discretion. *See Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1010 (9th Cir. 2004). Findings of fact underlying discovery sanctions are reviewed for clear error. *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997). If the district court fails to make factual findings, the decision whether to impose sanctions is reviewed de novo. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1408 (9th Cir. 1990).

### III. ANALYSIS

#### A. Motion to Compel

Defendants argue that paragraph 4 of the Order unambiguously lifted all previous discovery limitations theretofore imposed preventing discovery from opt-in Plaintiffs, and that the only such limitation was in fact the Magistrate's July 27, 2009 order granting in part and denying in part Defendants' Motion to Compel (#163), wherein the Magistrate had permitted individual discovery against only a 10% sampling of opt-in Plaintiffs, (*see* #214). Defendants complain that Plaintiffs have still refused to provide discovery concerning the remaining opt-in Plaintiffs, despite several requests, in violation of the Order.

Plaintiffs respond by requesting the Court to clarify that the Order only has the effect of:
identify[ing] and remov[ing] as plaintiffs in this case all persons who have

> improperly filed consents to join this case as plaintiffs; and [that a] plaintiff has improperly filed a consent to join this case if they filed a consent with the Court after September 14, 2009 or do not meet the class definition set forth in the Court's Notice Order of January 12, 2009 . . . .

(#286 at 2:13–18).

Plaintiffs, in turn, seek a ruling by the Court that any consents filed prior to September 14, 2009 by persons whose names are on lists provided to Plaintiffs' counsel by Defendants are necessarily proper (regardless of how such persons became aware of the lawsuit). (*Id.* at 2:26–3:8). Plaintiffs argue that the Court's command to identify to Defendants the "fruits" of the website meant only that Plaintiffs had to identify to Defendants such persons who are not members of the notice class. This is a contorted interpretation. The purpose of sanctions is to penalize behavior. Plaintiffs' counsel was penalized for operating the website outside of the court-controlled notice procedure—a website that contained false and/or misleading information, no less. Part of the sanctions were an order to:

> identify to Defendants in good faith: (a) which opt-in Plaintiffs visited the website or contacted Plaintiffs' counsel based on the Website, (b) which opt-in Plaintiffs downloaded the consent form from the Website, and (c) which opt-in Plaintiffs sent the consent forms provided on the Website to Plaintiffs' counsel—in short, all opt-in Plaintiffs and putative class members who are "fruits" of the Website.

(#269). The "clarification" Plaintiffs' counsel requests in this regard is no clarification at all, but a purposefully twisted interpretation of the Order. What sanction would it have been for the Court to have simply ordered that Plaintiffs' counsel identify to Defendants those persons who do not fall within the notice class or who filed their consent forms late? Defendants can figure this out for themselves—no discovery is needed for this. The purpose of the sanctions was to identify those persons who were improperly notified, and who may in fact be part of the notice class. That is a part of the penalty: that some putative class members who opted-in because of the website may be excluded because of counsel's improper actions in maintaining the website, regardless of whether

1  they fall within the notice class. For example, some persons within the notice class may have
2  received the proper notice and ignored it, but then later opted in because of and/or via the improper
3  website. It would be no sanction at all to rule that such persons necessarily cannot be stricken.
4  Plaintiff attempts to interpret the Order to mean that putative class members who are members of
5  the notice class, but who in fact received notice or took action only because of the improper website,
6  may still necessarily opt-in. The Court declined to strike such putative class members via the Order,
7  but it reserved for Defendants the right to move to strike them. (*See* #269). The Court denies
8  Plaintiffs' Motion for Clarification (#286) in this regard.

9        Both parties argue that the Order was unambiguous as to its scope, but they both argue that
10 the Order unambiguously favors their position. Although Plaintiffs' arguments concerning what
11 does and does not constitute a "fruit" of the website have no merit, Plaintiffs are correct that the
12 scope of the Order's removal of discovery limitations reaches only information concerning the
13 source of opt-in Plaintiffs. In other words, Defendants could send interrogatories to any opt-in
14 Plaintiff asking him or her anything reasonably related to how he or she joined the case or found out
15 about it. This is necessary to determine whether a particular Plaintiff is an impermissible fruit of the
16 website who Defendants may move to strike. But it is not a reasonable interpretation of the Order
17 that it permits individual discovery from each Plaintiff in this class action concerning the underlying
18 merits of each Plaintiff's individual case. The order states, "Any discovery limitations currently in
19 force against Defendants preventing them from discovering information *concerning* opt-in Plaintiffs
20 is hereby lifted." (#269) (emphasis added). Plaintiffs correctly point out the distinction between
21 information "concerning" these Plaintiffs and information "from" them. Defendants' argumentation
22 to the contrary is disingenuous in light of the scope of its own original request concerning the lifting
23 of discovery limitations:

> If the Court is unwilling to strike the consents at issue, Westgate requests that it is given an opportunity to contact these individuals, at Plaintiffs' expense, through written communication dispelling the misstatements contained in Plaintiffs' website, and conduct additional discovery *as may be needed to ferret out the depths to which Plaintiffs' counsel has subverted the court processes. In this regard, the Court-imposed restrictions on discovery directed to opt-in plaintiffs must be suspended*, as ascertaining the extent to which Plaintiffs' and their counsel have flaunted the judicial process and the degree to which the orderly administration of the notice and opt-in process has been subverted pre-empts the Court's desire to streamline the discovery process leading up to possible decertification of the conditional notice class.

(#224 at 16:20–17:5 (emphasis added)). Defendants clearly requested the lifting of discovery limitations for the purpose of discovering how opt-in Plaintiffs opted in, not concerning the underlying merits of their cases.

### B. Motion to Strike

Defendants have also moved to strike Rick Brunton as a named Plaintiff for failure to comply with discovery. Because Brunton failed to appear at two scheduled depositions, Defendants previously requested that the Magistrate Judge compel Brunton's attendance. At a December 1, 2009 hearing, the Magistrate Judge noted Brunton's previous failures to appear and Brunton's counsel's admission that he had had no contact with Brunton for two to three months despite aggressive attempts to locate him. (#279 at 2:22–27). The Magistrate Judge denied Defendants' motion to strike Brunton as a named Plaintiff at that time, instead ordering Brunton's deposition on January 4, 2010, and warning that failure to appear would result in a recommendation that he be dismissed for failure to appear at the deposition, comply with discovery obligations, and failure to obey an order of the Court. (*Id.* at 4:6–10). Brunton did not appear at the January 4, 2010 deposition. (#294 at 2:16–17).

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion to Compel (#285) is GRANTED in part and DENIED in part. Defendants may have discovery against any opt-in Plaintiffs with regard to how these opt-in Plaintiffs opted in, but not with regard to the underlying merits of their cases. Discovery to this depth remains limited to the 10% sampling granted by the Magistrate Judge.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Clarify (#286) is GRANTED in part and DENIED in part. The "fruits" of the website include all persons who opted in after having had any knowledge of the website, regardless of whether such persons were members of the notice class. Plaintiffs have a continuing duty to identify such persons to Defendants, and although such persons are not automatically stricken, Defendants may move to strike them.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Rick Brunton as a Named Plaintiff (#294) is GRANTED in part and DENIED in part. Rick Brunton is stricken as a named Plaintiff but may remain in the case as an opt-in Plaintiff.

DATED: This 22nd day of April, 2010.

_____
ROBERT C. JONES
United States District Judge